GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (*pro hac vice*)
  OSnyder@gibsondunn.com
KATHERINE MARQUART, SBN 248043
  KMarquart@gibsondunn.com
KARIN PORTLOCK (*pro hac vice*)
  KPortlock@gibsondunn.com
LEE R. CRAIN (*pro hac vice*)
  LCrain@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Tel.: 212.351.4000
Fax: 212.351.4035

MATTHEW S. KAHN, SBN 261679
  MKahn@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Tel.: 415.393.8200
Fax: 415.393.8306

LAUREN M. BLAS, SBN 296823
  LBlas@gibsondunn.com
JILLIAN N. LONDON, SBN 319924
  JLondon@gibsondunn.com
COURTNEY M. JOHNSON, SBN 324331
  CJohnson2@gibsondunn.com
LENORE H. ACKERMAN, SBN 324995
  LAckerman@gibsondunn.com
MACKENZIE A. MCCULLOUGH,
SBN 324343
  MMcCullough@gibsondunn.com
333 South Grand Avenue, Suite 4600
Los Angeles, CA  90071-3197
Tel.: 213.229.7000
Fax: 213.229.7520

Attorneys for Plaintiff Deon Jones

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DEON JONES, an individual,

                    Plaintiff,

          v.

CITY OF LOS ANGELES, a municipal entity, CHIEF MICHEL MOORE, LOS ANGELES POLICE DEPARTMENT, a municipal entity, DOE 1, and DOES 2-10 inclusive,

                    Defendants.

**CASE NO.  2:20-cv-11147-SVW-SK**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO AMEND THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Judge:    Stephen V. Wilson
Date:     December 13, 2021
Time:     1:30 pm

Complaint Filed:   December 9, 2020
Trial Date:        March 8, 2022

Gibson, Dunn &
Crutcher LLP

## NOTICE OF MOTION

TO THE COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 13, 2021, at 1:30 p.m. in the United States District Court for the Central District of California, 350 W 1st Street, Suite 4311, Los Angeles, California, in Courtroom 10A, 10th Floor, before the Honorable Stephen V. Wilson, the undersigned Plaintiff Deon Jones will, and hereby does, move the Court for an order granting him leave to file his Proposed First Amended Complaint.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 4, 2021.

For the first time in this case, and despite the numerous hurdles thrown up in discovery by Defendants and their effective stay of the case for a month and a half while they transitioned to new counsel, Plaintiff is in possession of sufficient evidence confirming the identity of the Los Angeles Police Department officer who shot him in the face with a 40mm Less-Lethal Launcher during the May 30, 2020 protest.  Plaintiff now seeks to add allegations related to this officer's actions, including adding him as a defendant to replace the John Doe 1 identified in the Complaint.  The remainder of the Proposed First Amended Complaint (attached hereto as Exhibit 1 to the Declaration of Katherine Marquart ("Marquart Decl.")) merely (i) introduces facts divulged in discovery that support the same legal theories that have governed this case from the outset and (ii) conforms this pleading to the appropriate governing law.  Plaintiff's amendments are undertaken in good faith and will cause no undue delay or unfair prejudice to Defendants.  Accordingly, this Court should grant the motion under the "liberal" amendment standard of Federal Rule of Civil Procedure 15.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of Katherine Marquart and exhibits thereto; the complete case file; arguments of counsel; and such other matters as the Court may consider.

Gibson, Dunn &
Crutcher LLP

ii

DATED:  November 12, 2021

GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER, *Pro Hac Vice*


By: ___/s/ *Orin Snyder*_____
ORIN SNYDER, *pro hac vice*
Attorneys for Plaintiff Deon Jones

# CONTENTS

NOTICE OF MOTION..................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................v

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ........................................................................................... 3

I.  An LAPD Officer Shoots Mr. Jones In The Face, And Mr. Jones Commences This Action To Vindicate His Constitutional Rights. ..................... 3

II.  This Court Orders The Parties To Engage In Discovery To Identify Mr. Jones' Shooter, But Defendants Stymie Discovery And Stonewall. ............ 5

III. Defendants Delay This Action With Additional Obstructionist Tactics.............. 8

IV.  ██████████████████████████████████████████
     ███████████████████████████████ ..................... 9

LEGAL STANDARD.................................................................................................. 12

ARGUMENT ............................................................................................................. 12

I.  Mr. Jones Has Pursued This Amendment Diligently, In Good Faith, And Without Undue Delay........................................................................................ 13

II.  Amending Would Cause No Undue Prejudice To Defendants.......................... 17

III. Defendants Have Already Conceded The Sufficiency Of Mr. Jones' Claims, Defeating Any Assertion That Amendment Is Futile. .......................... 20

CONCLUSION........................................................................................................... 21

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**CASES**

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*,
2020 WL 5775174 (C.D. Cal. July 8, 2020) ............................................................... 13

*Banc of California, Inc. v. Farmers & Merchants Bank of Long Beach*,
2017 WL 2972338 (C.D. Cal. Apr. 19, 2017) ............................................................ 20

*Bowen v. Target Corp.*,
2019 WL 9240985 (C.D. Cal. Nov. 12, 2019) ..................................................... 13, 16

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) ..................................................................................... 12

*Clarke v. Upton*,
703 F. Supp. 2d 1037 (E.D. Cal. 2010) ...................................................................... 20

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ............................................................................... 12, 17

*Deorle v. Rutherford*,
272 F.3d 1272 (9th Cir. 2001) ................................................................................... 21

*Dixon v. Magna-RX, Inc.*,
2016 WL 1397584 (C.D. Cal. Mar. 31, 2016) ...................................................... 14, 18

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................................. 12, 17

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................................... 17

*Gravity Defyer Corp. v. Under Armour, Inc.*,
2013 WL 12139125 (C.D. Cal. Sept. 3, 2013) ........................................................... 17

*Griggs v. Pace Am. Grp., Inc.*,
170 F.3d 877 (9th Cir. 1999) ..................................................................................... 12

*Hom, Tr. of Allen Ernest Hom Tr. Dated Aug. 19, 1992 v. RBB Bancorp*,
2019 WL 4266556 (S.D. Cal. Feb. 5, 2019) ............................................................... 19

*Hurn v. Ret. Fund Tr. of Plumbing, Heating and Piping Indus. of S. Cal.*,
648 F.2d 1252 (9th Cir. 1981) ................................................................................... 17

Gibson, Dunn &
Crutcher LLP

*Koistra v. Cnty. of San Diego*,
    2017 WL 2578936 (N.D. Cal. June 14, 2017)......................................12, 14, 18, 19

*Lopez v. Cook*,
    2015 WL 881624 (E.D. Cal. Mar. 2 2015) ...............................................................21

*Mendoza v. Cty. of San Bernardino*,
    2021 WL 3207951 (C.D. Cal. June 4, 2021) ..........................................................16

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012) ...................................................................................21

*NexGen HBM, Inc. v. ListReports, Inc.*,
    2018 WL 6438568 (C.D. Cal. Jan. 25, 2018) ........................................................16

*Pavemetrics Sys., Inc., v. Tetra Tech, Inc.*,
    2021 WL 4776361 (C.D. Cal. Aug. 23, 2021) .......................................................19

*Perez v. Performance Food Grp., Inc.*,
    2017 WL 8239633 (C.D. Cal. Oct. 2, 2017) ..........................................................12

*Rosenblum v. Blackstone*,
    2020 WL 1049916 (C.D. Cal. Jan. 22, 2020)........................................................20

*Ruben v. Marina City Club Condo. Owners Ass'n*,
    2013 WL 6072998 (C.D. Cal. Nov. 18, 2013) ..................................................18, 19

*Sonoma Cty Ass'n of Retired Emp. v. Sonoma Cty.*,
    708 F.3d 1109 (9th Cir. 2013) .................................................................................17

*Toshiba Am. Med. Sys., Inc. v. Marquis Diagnostic Imaging, LLC*,
    2018 WL 626393 (C.D. Cal. Jan. 10, 2018).........................................................17

*Townsend Farms v. Goknur Gida*,
    2016 WL 10570248 (C.D. Cal. Aug. 17, 2016) ....................................................20

*Tri-Dam v. Yick*,
    2015 WL 3868688 (E.D. Cal. June 23, 2015) .......................................................12

*Truijillo v. Ametek, Inc.*,
    2017 WL 2670748 (S.D. Cal. June 21, 2017) .......................................................16

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) .................................................................................17

Gibson, Dunn &
Crutcher LLP

*United States v. Webb,*
    655 F.2d 977 (9th Cir. 1981) ......................................................................17

*Webspectator Corp. v. Andre Tomas Da Silva Pereira Nascimento Parreira,*
    2017 WL 10059269 (C.D. Cal. Oct. 31, 2017) ........................................20

*Wilson v. Wilson,*
    2016 WL 11002374 (C.D. Cal. July 19, 2016) .......................................12

**RULES**

Fed. R. Civ. P. 15 ..............................................................................12, 17

Fed. R. Civ. P. 12 ....................................................................................20

Gibson, Dunn &
Crutcher LLP

vii

1

**INTRODUCTION**

2      Deon Jones brought this civil rights action to hold accountable the individuals

3 and institutions that violated his constitutional rights, including his right to peaceful

4 protest.  On May 30, 2020, Mr. Jones was peacefully demonstrating alongside

5 thousands of others in the wake of George Floyd's murder at the hands of a

6 Minneapolis police officer.  Suddenly, and without warning or provocation, a Los

7 Angeles Police Department ("LAPD") officer shot Mr. Jones in the face with a rubber

8 bullet.  The bullet struck an inch away from killing or blinding him.  It left him with

9 lasting physical and psychological damage and trauma.  The shooting was unprovoked

10 and unjustified.  It violated Mr. Jones' constitutional and other legal rights.

11      At the time he filed this action, Mr. Jones did not know the identity of the officer

12 who shot him.  Mr. Jones sued the officer as defendant John Doe 1.  This Court

13 recognized that fact and issued several orders to try to help facilitate the identification

14 of the shooter.  *See* Dkt. 45; Dkt. 54.  Despite the Court's assistance, the discovery

15 process has been challenging.  Defendants have obstructed Mr. Jones' pursuit of the

16 truth.  They delayed at every turn—including by deliberately concealing critical

17 evidence for four months and lying to the Court and Mr. Jones about it.  All year long,

18 Defendants resisted providing discovery because, in their counsel's words, "[t]here is

19 no discovery cut-off date in the case at this time, so there is no rush."  Ex. 8 at 1.[1]

20      This case took a dramatic turn on October 15, 2021.  On that date, Defendants

21 produced their long-promised Force Investigation Division Report (the "FID Report").

22 Ex. 4.  That report offered ███████████████████████████████

23 █████████  Defendants had promised Mr. Jones and this Court that the report would be

24 produced in August 2021.  It was not.  Defendants had repeatedly told Mr. Jones and

25 the Court that the report was not ready—including as late as August 24, 2021.  Ex. 9.

26 That was false, too.  They then delayed production for nearly another two months

27 ────────────────

28 [1]  All references to Ex. ___ refer to exhibits attached to the Declaration of Katherine
     Marquart filed in support of this motion.

while effectuating a languid change of counsel.  It was all a ruse—a ploy to delay

production of the most critical document in this case.  Once they finally produced the

FID report in October, ███████████████████████████████████████████████

████    Defendants had been lying to Mr. Jones and this Court about the FID Report.

Once produced, ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████

    ████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████.  It is time for Officer Bueno to be held

accountable.  Mr. Jones therefore moves for leave to file his Proposed First Amended

Complaint.  *See* Ex. 1 ("Proposed FAC").  The Proposed FAC would name Officer

Bueno as the John Doe 1 who shot Mr. Jones and provide further details about the day

he was shot.

    This Court should permit amendment for three reasons.  *First*, Mr. Jones acted

diligently and seeks to amend in good faith.  He has moved to amend within a mere 28

days of receiving the evidence that confirms the identity of his shooter.  Courts

regularly conclude plaintiffs who delay ***months*** before seeking to amend are still

reasonably diligent.  *Second*, Defendants will suffer no undue prejudice from amendment.  And any prejudice they may claim is of their own creation, as Defendants' discovery tactics were designed to drag out what should have been the routine and punctual production of critical evidence.  If Defendants had simply ███████████████████████████████████████ instead of lying to Mr. Jones and the Court about ████████████████, Mr. Jones would have amended long ago.  *Third*, the Proposed FAC is not futile.  It will simply add: (1) a new defendant whose addition has long been contemplated and discussed among the parties and this Court and (2) additional factual allegations to support existing causes of action and legal theories whose sufficiency Defendants already conceded when they answered the initial Complaint rather than moved to dismiss.

## STATEMENT OF FACTS

### I.   An LAPD Officer Shoots Mr. Jones In The Face, And Mr. Jones Commences This Action To Vindicate His Constitutional Rights.

Mr. Jones is a 30-year-old Black man who lives and works in Los Angeles. Proposed FAC ¶ 21.  From a young age, Mr. Jones has actively participated in local and national politics to fight racism, promote racial equity, and amplify the voices of Black Americans.  *Id.*  While in college, Mr. Jones worked in then-Vice President Biden's public engagement office; was the national spokesperson for Campaign for Justice; served on the board of Colin Powell's America's Promise Alliance; was named a Harry S. Truman Scholar; and was elected to the Advisory Neighborhood Commission (becoming Washington D.C.'s youngest elected official).  *Id.*  Mr. Jones then became a Truman-Albright Fellow and served as the special assistant to the U.S. Deputy Secretary of Defense for Military Community and Family Policy.  *Id.* Subsequently, Mr. Jones joined a team of Obama Administration officials helping individuals without college degrees gain skills for technical jobs.  *Id.*

Now, Mr. Jones lives and works in Los Angeles as an artist and creative consultant.  *Id.* ¶ 22.  His work includes helping the Oprah Winfrey Network with its

1   digital media presence; working on digital projects focusing on Black language and

2   telling the stories of Black people; and creating art with Olympic Gold Medalist

3   Tommie Smith that encourages conversations about social justice.  *Id.*

4          After the murder of George Floyd at the hands of a Minneapolis police officer in

5   May 2020, Mr. Jones decided to add his voice to the masses crying out for social

6   justice and freedom from police violence by participating in peaceful protests taking

7   place throughout Los Angeles.  *Id.*  On May 30, 2020, Mr. Jones, along with thousands

8   of others, gathered in a West Hollywood park to listen to speeches.  *Id.* ¶ 36.  From

9   there, the protestors began a peaceful march.  *Id.* ¶ 37.

10         As the march neared its end, LAPD officers in full riot gear deployed and

11  blocked the protestors' path.  *Id.*  Mr. Jones and other protestors moved into an

12  adjacent parking lot in front of a Trader Joe's to avoid confrontation with the LAPD

13  and begin making their way home.  *Id.*  But LAPD officers, including Officer Bueno,

14  held the protestors in place and prevented them from leaving.  *Id.* ¶ 38.  Even as they

15  blocked the protestors' exit, the officers issued contradictory orders to disperse and

16  used batons to beat protestors who failed to do so.  *Id.* ¶¶ 38–39.

17         Mr. Jones was attempting to leave this chaotic scene when he was struck by an

18  LAPD officer's baton.  *Id.* ¶ 39.  He continued to make his way towards a side street

19  where he could remove himself from the protest's path and the officers' intensifying

20  violence.  *Id.*  At approximately 3:26 p.m., shortly before Mr. Jones reached the exit,

21  an individual protestor standing behind Mr. Jones (but in no way associated with him)

22  threw a water bottle in the direction of Officer Bueno.  *Id.*  Without pausing to

23  determine who threw the bottle—which did not strike him—Officer Bueno raised his

24  40mm "Less-Lethal Launcher" in Mr. Jones' direction from close range and fired a

25  rubber bullet that struck Mr. Jones on the right side of his face, near his eye and

26  temple.  *Id.* ¶ 41.  Bleeding profusely and with skin hanging off his face, Mr. Jones ran

27  through the crowd before collapsing in an alley not far from the scene.  *Id.* ¶¶ 41–42.

28         After collapsing in the alley, Mr. Jones was transported to the hospital by two

strangers who witnessed his fall. *Id.* ¶ 52. Mr. Jones spent more than eight hours at the hospital, where he learned that he had suffered a laceration to his face requiring ten stitches, a closed fracture of his zygomatic arch and maxilla bone, and a head injury. *Id.* Mr. Jones' ophthalmologist later told him that if the bullet had struck him just a few millimeters off, he might have been blinded or killed. *Id.* ¶ 54.

The day after being struck by the rubber bullet, Mr. Jones began experiencing dizziness and a ringing in his head. *Id.* ¶ 53. He coughed up blood for several days thereafter and suffered nightmares for weeks. *Id.* To this day, Mr. Jones continues to grapple with the impact of his trauma. *Id.* ¶ 56. Because of his injuries, Mr. Jones is now forever at heightened risk of blindness and further catastrophic injury if he ever experiences another heavy blow to the impacted region of his face. *Id.* ¶ 55.

On December 9, 2020, Mr. Jones commenced this action, filing a complaint against the City of Los Angeles, the LAPD, and LAPD Chief Michel Moore and alleging they had violated his rights under the U.S. and California Constitutions. Dkt. 1. Mr. Jones was unable to ascertain the identity of the LAPD officer who shot him based on publicly available information. Dkt. 1 ¶¶ 20–21. Accordingly, when he initiated this case, Mr. Jones sued John Doe 1 as a stand-in defendant for that officer.

## II.   This Court Orders The Parties To Engage In Discovery To Identify Mr. Jones' Shooter, But Defendants Stymie Discovery And Stonewall.

Following an initial status conference on March 17, 2021, the Court issued an order instructing the parties to "identify, with haste, Doe 1." Dkt. 45. The Court ordered the parties to investigate and obtain any video footage relevant to making this identification and ordered Defendants to produce a trove of documents in their possession, including (i) "all relevant videos obtained in the above described investigation, and all relevant videos recorded by the LAPD or that the LAPD has in its possession," and (ii) "any incident reports or other documentation that describes the use of rubber bullets by LAPD on May 30, 2020 at or near the scene where Plaintiff

1   was struck by a rubber bullet." *Id.* at 1–2.

2         In compliance with the Court's Order, Mr. Jones quickly and aggressively

3   investigated the circumstances of the shooting, including by collecting video footage

4   from third parties and producing it to Defendants.  Dkt. 53 at 2–4.  Mr. Jones also

5   retained consultants to review and enhance body-worn video footage in order to assist

6   with the identification of the shooter.

7         But for their part, and despite the Court's clear instructions, Defendants failed to

8   investigate and confirm the identity of John Doe 1 in a timely manner.  They refused to

9   produce critical discovery that would have allowed Mr. Jones to ascertain the shooter's

10  identity, prompting Mr. Jones to notify the Court in the April 9, 2021 Joint Status

11  Report that Defendants had "engage[d] in obfuscation," and "Defendants appear[ed] to

12  have made only half-hearted efforts to comply with the Order, and their status report

13  raise[d] more alarm bells and concerns than it provide[d] answers."  Dkt. 53 at 1.

14        On April 13, 2021, the Court responded to Defendants' misconduct by ordering

15  that:  (i) the deposition of Detective Brad Michel, the LAPD officer responsible for

16  investigating the shooting of Mr. Jones, take place within 21 days; (ii) Defendants

17  "turn over all videos in their possession, not just those that Defendants, in their own

18  view, believe are relevant"; and (iii) Defendants disclose to Mr. Jones the identities of

19  the "20 officers who [could have] struck Plaintiff with a baton and [the] approximately

20  12 officers who fired a projectile."  Dkt. 54 (alterations in original).

21        Despite the Court's clear instruction to turn over "***all*** videos of the event," *id.*

22  (emphasis added), Defendants slow-rolled the production of relevant videos.

23  Defendants had represented to the Court that the FID had reviewed "252 body worn

24  videos" relating to the protest where Mr. Jones was shot.  Dkt. 53 at 8.  But Defendants

25  initially produced only limited body-worn videos.  On April 27, 2021, Defendants

26  informed Mr. Jones that they would not produce the 252 videos but rather just what

27  they subjectively believed to be the "relevant videos" or the "relevant portions . . . of

28  body worn videos."  Ex. 2 at 1–2.  Defendants later walked back their position, instead

Gibson, Dunn &
Crutcher LLP

6

stating that they would produce all videos but that it would take "a few months" to complete their production. Ex. 3 at 3. But by May 14, 2021, Defendants had **_still_** failed to produce "all videos," including "body cam footage, security footage and videos that LAPD acquired from third parties through independent investigation." Dkt. 45 at 1; Dkt. 56 at 4. Defendants did not complete the production of all relevant videos until June 14, 2021, Dkt. 59 at 3, despite the Court's Order to do so "**_no later_** than April 5, 2021," Dkt. 45 at 1 (emphasis added).

Further, as of May 14, 2021, nearly two months after the Court ordered the parties to identify Mr. Jones' shooter, Defendants still had not informed Mr. Jones of any facts or details about their investigation into his shooting. Defendants had also offered no indication that they were close to identifying the shooter. Dkt. 56 at 1–2. At this point, Mr. Jones was working diligently to review the limited videos produced by Defendants as soon as they were turned over. Officer Bueno's video proved particularly unhelpful, as he had (suspiciously) manually turned off his camera during the relevant time period. *See* Dkt. 59 at 4. Nonetheless, based on a close review of video from other officers, Mr. Jones began to suspect (but could not yet confirm) that Officer Bueno was the officer who shot him in the face with a rubber bullet. *Id.* at 1.

Defendants, however, repeatedly disputed Officer Bueno's involvement. Officer Bueno did, too. ██████████████████████████; *see also* Ex. 5 at 35:4–10. At his deposition, he claimed that he did not know Mr. Jones and denied shooting anyone in the face on May 30, 2020. Ex. 5 at 35:4–10. Defendants also engaged in tactics designed to obfuscate the shooter's identity and further prolong discovery, including refusing to turn over Court-ordered videos and obstructing depositions. *See* Dkt. 56 at 4–6. But Mr. Jones was still working hard to find sufficient evidence to identify John Doe 1. In his August 2021 status report, Mr. Jones emphasized that he "require[d] further discovery . . . to be assured that a good-faith basis exist[ed] to name the Doe before asserting public allegations of his misconduct." Dkt. 59 at 1.

Put simply, until just a few weeks ago, Mr. Jones could not responsibly name

Officer Bueno publicly as his shooter because he lacked a strong, good faith basis to do so.  As it turned out, ███████████████████████████████

████████████████████████████████████████████████████████

███████████████

### III. Defendants Delay This Action With Additional Obstructionist Tactics.

In addition to the delayed production of relevant body-worn videos, Defendants employed other tactics that have needlessly stalled discovery.  Mr. Jones diligently pursued fact discovery, propounding numerous requests for production, interrogatories, and requests for admission.  *See* Marquart Decl. ¶¶ 2–3; Dkt. 59 at 5.  But as of August 9, 2021, Defendants had failed to adequately respond to more than *half* of Mr. Jones' discovery requests.  Dkt. 59 at 2.  When Mr. Jones impressed upon Defendants the need to conduct discovery in a timely manner, Defendants responded that there was ***"no rush" in this litigation***.  Ex. 8 at 1 (emphasis added).

By August 2021, Mr. Jones had noticed multiple additional depositions and requested Defendants participate in an informal discovery conference with the Magistrate Judge to resolve the parties' myriad discovery disputes.  Dkt. 59 at 2–4; Ex. 11.  But then suddenly, on August 27, 2021, Defendants announced they were changing counsel and unilaterally took all depositions off calendar and halted discovery entirely (including refusing to participate in an informal discovery conference).  Ex. 10; Ex. 12.  Defendants then went radio silent for weeks.  When new counsel finally surfaced on September 15, they took another two-and-a-half weeks to engage with Mr. Jones.  *See* Ex. 15.  The result: a one-and-a-half-month unilateral stay of discovery that further delayed this case and Mr. Jones' ability to obtain the information necessary to identify the shooter and amend the Complaint.

During the few depositions that did occur, Defendants obstructed and stymied Mr. Jones' efforts to ascertain the truth about what happened to him on the day he was shot.  For example, their counsel obstructed depositions with a flurry of improper speaking objections and instructions to not to answer on non-privilege grounds.  Dkt.

59 at 5–6.  Similarly, on multiple occasions, Defendants waited until after a witness

had been deposed to produce critical documents or provide the context necessary for

documents referenced during the deposition.  *Id.* at 6.  During Officer Bueno's

deposition, Mr. Jones learned that Defendants had failed to produce a legible copy of

one of the most critical documents in the case.  *Id.*  Defendants admitted that this

failure warranted continuing the deposition.  *Id.*

 Defendants' obstruction has continued.  For example, Defendants have informed

Mr. Jones that the LAPD's Internal Affairs Division ("IAD") Report about the May 30,

2020 shooting of Mr. Jones will not be made available to Mr. Jones until December

2021, at least a month from now, and more than 18 months after Mr. Jones was shot.

██████████████████████████, Mr. Jones can only assume the

IAD Report is available and could be produced but Defendants are baselessly

withholding it.  And to date, many of the video files Defendants produced do not

contain original footage but rather footage that was, in many instances, edited from the

original version.  *See* Ex. 6 at 1–2.  Yet Defendants have refused to produce audit trails

for that body-worn footage.  Marquart Decl. ¶ 2.  Such audit trails are critical for Mr.

Jones' experts to determine the authenticity of videos produced by Defendants and

ascertain whether any alterations were made to the original versions.  Ex. 6 at 3.

**IV.** ████████████████████████████████

████████████████████████████████.

 Defendants had promised this Court and Mr. Jones that they would produce the

FID Report in August 2021.  *See* Dkt. 59 at 8.  They did not.  Instead, they obfuscated

and dissembled, all in an effort to delay production of the report and the critical

conclusions it contained.  For example, in the August 9 Joint Status Report,

Defendants indicated to this Court that the FID Report was not yet "available" or

"completed."  *Id.*  On August 13, Defendants' counsel represented to Mr. Jones that

she "d[id] not have the final [FID] report."  Ex. 11 at 1.  On August 23, Defendants'

counsel claimed that she would "look into the status of the related FID . . .

investigations." Ex. 12 at 1.  On August 24, Defendants' counsel again represented

that she "d[idn't] have the final FID report as of now." Ex. 9 at 1.  Defendants then

changed counsel, as described above.  Finally, on October 5, Defendants' new counsel

wrote to Mr. Jones, promising to produce the FID Report on October 15.  Ex. 15 at 2.

But when the report was finally produced,



████████████████████

████████████████████████████████████, he immediately began preparing his amendment to name Officer Bueno as John Doe 1 and add additional facts in support of his existing claims.  Marquart Decl. ¶ 4; *see* Ex. 7 at 14. The Proposed FAC adds no new claims and only one party—to replace the originally sued John Doe 1.  At least four times over the course of this case, Mr. Jones and his counsel told Defendants, their counsel, and this Court that the shooter would be added as a defendant when positively identified.  *See* Compl. ¶ 21; Dkt. 53 at 4; Dkt. 56 at 3–4; Dkt. 59 at 2–4.  And now, ██████████████████████████ ████████████████ Mr. Jones prepared his amendment as planned.

On October 26, 2021, eleven days after Defendants produced the FID Report and as Mr. Jones was working diligently on the Proposed FAC, this Court entered its Pre-Trial Order setting a March 8, 2022 trial date.  Dkt. 65.  The very next day, Mr. Jones informed Defendants he intended to file the Proposed FAC and asked to meet and confer to determine if Defendants would consent to it being filed.  *See* Ex. 7 at 14.

Defendants responded that they intended to move to bifurcate the trial so as to try Mr. Jones' individual-capacity claims against the shooter first and then any *Monell* claims against the remaining Defendants later.  Ex. 7 at 12–13.  Defendants also refused to consent to the Proposed FAC being filed.  *Id.* at 3–4.  Incredibly, even though ***Defendants*** had delayed discovery in this action ████████████████ ██████ they claimed prejudice from the addition of Officer Bueno to this case.  *Id.* And even though Defendants seek bifurcation to try Mr. Jones' individual-capacity claims first, they simultaneously want to prevent Mr. Jones from naming ***the very John Doe 1*** to whom those claims apply.  Mr. Jones asked Defendants to reconsider this irrational, bad-faith position.  *Id.* at 2–3.  Defendants refused.  *Id.* at 1–2.  This motion ensued.

**LEGAL STANDARD**

Where, as here, leave of court is required to amend a pleading, Rule 15 instructs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This standard applies equally to amendments adding new allegations, new claims, or new parties (absent statute of limitations issues not present here). *Tri-Dam v. Yick*, 2015 WL 3868688, at *2 (E.D. Cal. June 23, 2015) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)). A court only "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, . . . undue prejudice to the opposing party . . . , [or] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (citation omitted). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Wilson v. Wilson*, 2016 WL 11002374, at *1 (C.D. Cal. July 19, 2016) (Wilson, J.) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

While the decision to grant leave to amend rests in the sound discretion of the court, "this discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with 'extreme liberality.'" *Koistra v. Cnty. of San Diego*, 2017 WL 2578936, at *3 (N.D. Cal. June 14, 2017) (quoting *DCD Programs*, 833 F.2d at 186). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). The non-moving party bears the burden of proving that leave to amend should be denied. *Perez v. Performance Food Grp., Inc.*, 2017 WL 8239633, at *6 (C.D. Cal. Oct. 2, 2017) (citation omitted).

**ARGUMENT**

Leave to amend should be granted here because "justice so requires." Fed. R. Civ. P. 15(a)(2). The proposed amendments are neither unduly delayed nor made in bad faith. To the extent that there has been any delay in naming Officer Bueno as a

defendant, that delay was caused entirely by Defendants': (1) dilatory discovery conduct; (2) one-and-a-half-month self-help stay of discovery when it changed counsel; ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████████████████████████████████████. Nor will the proposed amendments cause undue prejudice to Defendants, because: (1) discovery remains ongoing for several additional months; (2) the claims against Officer Bueno mirror those brought against the other Defendants; and (3) Defendants have long known Officer Bueno would be added to this suit given the centrality of his conduct to this case. Although they hid this fact from Mr. Jones (and thus delayed his ability to amend the Complaint), █████████████████████████████████████████ █████████████████████████████ Finally, amendment would not be futile. Defendants have already conceded the original Complaint was legally sufficient, and the Proposed FAC only adds *more* well-pleaded allegations in support of Mr. Jones' existing claims. Leave to amend should be granted.

## I.   Mr. Jones Has Pursued This Amendment Diligently, In Good Faith, And Without Undue Delay.

When considering a plaintiff's diligence, "[t]he volume and complexity of discovery" is taken into account. *Bowen v. Target Corp.*, 2019 WL 9240985, at *3 (C.D. Cal. Nov. 12, 2019). "[T]he passage of time is not, in and of itself, undue delay." *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 2020 WL 5775174, at *5 (C.D. Cal. July 8, 2020) (quotation and quotation marks omitted). The relevant inquiry is "whether the moving party knew of the facts and legal bases for the amendments at the time the operative pleading was filed." *Id.*

Here, Mr. Jones' Proposed FAC is the product of his diligent and good-faith efforts to uncover the identity of John Doe 1 and to learn additional relevant facts surrounding the shooting. It is undisputed that Mr. Jones did not know these facts "at the time the operative pleading was filed," *id.*, such that he could have named Officer

Bueno as a defendant then.  To the contrary, Mr. Jones disclosed early on—*i.e.*, from the moment he sued John Doe 1—and repeated throughout this case that he needed discovery to identify the officer that shot him in the face.  And Mr. Jones was transparent that he intended to amend his Complaint accordingly when he had a sufficient basis to publicly accuse a police officer of such egregious misconduct.  *See* Compl. ¶ 21; Dkt. 59 at 2–4; *see also Koistra*, 2017 WL 2578936, at *3 (plaintiffs were "diligent in informing Defendants of their intention to amend the complaint").

The Court thus ordered Defendants to assist Mr. Jones in identifying John Doe 1 "with haste."  Dkt. 45 at 1.  Consistent with that directive, Mr. Jones acted quickly to attempt to identify the shooter, serving 36 requests for production, 23 interrogatories to Defendant LAPD, nine interrogatories to Defendants Moore and City of Los Angeles, and 23 requests for admission.  Dkt. 59 at 3.  And Mr. Jones deposed three of the LAPD's employees in an attempt to identify his shooter (with more depositions scheduled in the coming weeks).  *Id.* at 3–4.  Mr. Jones and his counsel have also reviewed hundreds of hours of video footage and thousands of pages of documents. *Id.* at 3.  And Mr. Jones has retained consultants to review and enhance video as well. *Id.*

As a result of this meticulous review of video evidence, Mr. Jones came to **suspect** that Officer Bueno was the shooter.  Dkt. 56 at 6.  But in order to **confirm** that suspicion and "establish a good faith basis" to add Officer Bueno as a defendant, Mr. Jones responsibly further investigated the facts surrounding the shooting.  *Dixon v. Magna-RX, Inc.*, 2016 WL 1397584, at *4 (C.D. Cal. Mar. 31, 2016) (finding delay in amending was warranted by need to conduct further investigation in order to "establish a good faith basis" to add new defendants).  His investigation took time and only recently came to completion for multiple reasons, including:

- *First*, the body-worn videos produced by Defendants are not the original, highest-quality versions of the files.  *See* Ex. 6 at 1–2.  Mr. Jones has made repeated requests for the original videos generated by the body-worn cameras and audit trails

1  of the video files in order to determinate their authenticity, but Defendants have

2  produced none as of today.  *See id.* at 2–3; Marquart Decl. ¶ 2.

3  • *Second*, the camera Officer Bueno was wearing was suspiciously turned off at the

4  very time of the shooting, and was not turned back on until after Mr. Jones had fled

5  the scene and escaped further violence.  Dkt. 59 at 4.  That means Plaintiff could

6  not confirm Officer Bueno's culpability from his body-worn video alone.

7  • *Third*, Defendants repeatedly have denied that Officer Bueno, or any LAPD officer,

8  is John Doe 1.  For example, despite possessing and reviewing hundreds of hours of

9  video footage, Defendants claimed that LAPD could not identify "***any*** footage

10  which substantiates [Mr. Jones'] allegations."  Dkt. 53 at 7 (emphasis added).

11  ██████████████████████████████████████████████████

12  ████████████████████████████████, Defendants kept disputing

13  "whether any LAPD body worn footage depicts the incident at issue."  Dkt. 56 at

14  10.  Officer Bueno himself also denied shooting Mr. Jones, testifying "I don't even

15  know who your client is" during his deposition.  Ex. 5 at 35:4–7.  He went further

16  to deny shooting ***anyone*** in the face on May 30, 2020.  *Id.* at 35:8–10.

17  • *Fourth*, Defendants routinely engaged in dilatory discovery tactics, such as failing

18  to adequately respond to over half of Mr. Jones' discovery requests; unilaterally

19  instituting a one-and-a-half-month stay of discovery following their change of

20  counsel (and thus thwarting Mr. Jones' ability to initiate an informal discovery

21  conference with the Magistrate Judge); regularly obstructing depositions with

22  improper speaking objections; and refusing to produce critical discovery materials

23  including ████████████████████ and the IAD Report (which Defendants

24  still have not produced).  *See* Dkt. 59 at 5–6.  Defendant's position was—and seems

25  to still be—that there is "no rush" in this case.  Ex. 8 at 1.

26  ████████████████████████████████████████

27  ██████████████████████████████████████████████

28  ████████████████████████████████████████████████ Dkt. 56 at

7. 

Along with the other evidence Plaintiff had reviewed, ████████████ Mr. Jones the good faith basis to name Officer Bueno as John Doe 1.  *Id.*

Mr. Jones then moved expeditiously to prepare the Proposed FAC.  He met and conferred with Defendants' counsel as quickly as their schedule would permit, and offered the text of the Proposed FAC to counsel within mere weeks of receiving the FID Report.  *See* Ex. 16 at 1.  This turnaround exemplifies diligence.  In fact, courts regularly find ***months***-long delays to be reasonably diligent.  *NexGen HBM, Inc. v. ListReports, Inc.*, 2018 WL 6438568, at *2 (C.D. Cal. Jan. 25, 2018) ("Plaintiffs' delay of less than two months is not undue delay."); *Truijillo v. Ametek, Inc.*, 2017 WL 2670748, at *2–3 (S.D. Cal. June 21, 2017) (rejecting argument plaintiffs should have added new defendant over a year prior because plaintiffs required additional discovery to establish new defendant's direct liability).  Nor did Mr. Jones unduly delay in moving to amend given that this case is still at the discovery stage and the Proposed FAC would have no impact on any discovery deadline or trial.  *Bowen*, 2019 WL 9240985, at *4.

And in any event, any delay here is solely Defendants' fault.  Despite the Court's Order for the parties to act with "haste," Dkt. 45 at 1, Defendants dragged their feet, insisting that "[t]here is no discovery cut-off date in the case at this time, so there is ***no rush***."  Dkt. 59 at 6 (emphasis added); Ex. 8 at 1.  *See Mendoza v. Cty. of San Bernardino*, 2021 WL 3207951, at *4 (C.D. Cal. June 4, 2021) (permitting addition of defendants in fourth amended complaint where defendant was "not without fault" by failing to identify Doe defendants earlier).  Denying leave to amend under these

1    circumstances would also create perverse incentives for plaintiffs to name new

2    defendants without sufficient basis out of fear their amendments will be disallowed

3    due to delay, even where the delay is caused by the opposing party.  Mr. Jones should

4    be commended for his careful approach to naming Officer Bueno, not penalized for it.

5    Defendants' choice to hide the FID Report for four months does not now entitle them

6    to object when Mr. Jones, in reliance on that report, seeks leave to amend.[2]

7    **II.    Amending Would Cause No Undue Prejudice To Defendants.**

8         "Absent prejudice, or a strong showing of any of the remaining . . . factors, there

9    exists a *presumption* under Rule 15(a) in favor of granting leave to amend."

10   *Eminence*, 316 F.3d at 1052 (emphasis in original) (citing *Foman v. Davis*, 371 U.S.

11   178, 182 (1962)).  Defendants bear the burden of establishing prejudice.  *DCD*

12   *Programs*, 833 F.2d at 186–87.  They may not rely on "[b]ald assertions of prejudice"

13   to carry this burden, *Hurn v. Ret. Fund Tr. of Plumbing, Heating and Piping Indus. of*

14   *S. Cal.*, 648 F.2d 1252, 1254 (9th Cir. 1981), but must instead present "strong

15   evidence" of prejudice, *Sonoma Cty Ass'n of Retired Emp. v. Sonoma Cty.*, 708 F.3d

16   1109, 1117 (9th Cir. 2013).  Where a plaintiff "does not seek to assert a new legal

17   theory" defendants generally fail to meet this burden.  *United States v. United*

18   *Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see, e.g.*, *Gravity Defyer*

19   *Corp. v. Under Armour, Inc.*, 2013 WL 12139125, at *2 (C.D. Cal. Sept. 3, 2013) (no

20   prejudice in part because "there is a significant relationship between the claims

21   advanced in the First and Second Amended Complaints").

22        Defendants cannot show undue prejudice here, since the Proposed FAC adds no

23   new legal theories and only one defendant—Officer Bueno—who Defendants have

24   known (but refused to confirm to Plaintiffs) for ***months*** likely would be added to the

25   case.  For example, Defendants noted to Mr. Jones in August that Officer Bueno is

26   _____

27   [2] Even if the Court found Mr. Jones delayed in amending (and he did not), delay
     alone is insufficient grounds to deny amendment.  *Toshiba Am. Med. Sys., Inc. v.*
28   *Marquis Diagnostic Imaging, LLC*, 2018 WL 626393, at *1 (C.D. Cal. Jan. 10,
     2018) (quoting *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981)).

Gibson, Dunn &
Crutcher LLP

"the officer you seem to believe is the alleged [D]oe."  Ex. 14 at 1.  From Defendants'

perspective, adding Officer Bueno does not change this case at all.  And the Proposed

FAC's additional factual allegations in support of the existing causes of action do

nothing more than provide further bases for claims Defendants already have answered

and are defending on the merits.  *See, e.g.*, *Dixon*, 2016 WL 1397584, at *5 (finding no

prejudice where addition of defendants did "not alter nature of the litigation"); *Ruben*

*v. Marina City Club Condo. Owners Ass'n*, 2013 WL 6072998, at *2 (C.D. Cal. Nov.

18, 2013) (finding no prejudice where amendment would not "radically shift the

case").

  The Southern District of California's decision in *Koistra v. County of San Diego*

is particularly instructive in the present context.  2017 WL 2578936, at *3.  In *Koistra*,

the plaintiffs sought to amend their complaint to add a previously unnamed defendant

whose misconduct formed the primary basis for the pending claims.  *Id.* at *4.  The

court concluded that, given the centrality of the defendant's conduct to the lawsuit, the

defendants "would have known" that his addition was forthcoming.  *Id.*  Because "only

one additional defendant [wa]s being named, and no new or different legal theory

[wa]s being asserted," the defense was not in a position where it would "have to

reconsider [i]ts entire case."  *Id.*  And, in light of the fact that fact discovery had not

yet closed when the motion to amend was filed, any prejudice would be "minimal and

not enough to overcome the strong policy in favor of allowing amendment."  *Id.*  In

light of these facts, the court granted the motion to amend.  *Id.* at *5.

  These same factors counsel in favor of granting Mr. Jones' motion and against a

finding of prejudice.  This lawsuit is and has always been primarily grounded in

Mr. Jones' claim that "an LAPD officer in riot gear just a few feet away from him

aimed and fired a rubber bullet at Mr. Jones from close range, striking Mr. Jones in the

face, just below his right eye."  *See* Compl. ¶ 5.  Defendants were aware that Mr. Jones

would amend the Complaint to identify the officer when Mr. Jones had sufficient basis

to do so.  *See, e.g.*, Dkt. 59 at 2 ("Plaintiff intends to move for leave to amend the

complaint to add the suspected Doe officer as a party once Defendants are in compliance with their discovery obligations.").  And both Defendants and Officer Bueno himself knew he would likely be identified as the shooter by no later than June 2021, given: ███████████████████████ (2) Officer Bueno's June 23, 2021 deposition, where the questioning largely revolved around whether he shot Mr. Jones (though he denied doing so); and (3) Mr. Jones' repeated indications to Defendants that he suspected Officer Bueno was the shooter and that he would be added to the case when Mr. Jones could confirm that suspicion.  *See* Dkt. 56 at 1; Dkt. 59 at 2; ██ ███████████████ Ex. 5 at 35:4–10.  Finally, just as in *Koistra*, because Mr. Jones is not adding any new legal theories, there is no risk Defendants would need to "reconsider [their] entire case" if leave to amend were granted.  2017 WL 2578936, at *4.  Adding Officer Bueno does not change their defense at all.

Defendants thus cannot carry their burden to show that granting leave to amend would result in clear prejudice.  There is none.  By contrast, ***denying*** amendment would prejudice this Court's resources and elevate form over substance.  Because the statute of limitations has yet to run, Mr. Jones can still bring his claims against Officer Bueno in a separate lawsuit.  Given the significant overlap between the claims against Officer Bueno and Defendants, separating Mr. Jones' claims into two lawsuits in this way would not remotely serve judicial economy.  *See Pavemetrics Sys., Inc., v. Tetra Tech, Inc.*, 2021 WL 4776361, at *4 (C.D. Cal. Aug. 23, 2021) (granting motion to amend because judicial economy favored keeping related claims in same case).[3]

---

[3] Officer Bueno also suffers no prejudice here.  He was "already aware of this action" months ago and the fact he might be added to it—even if Mr. Jones lacked the good-faith basis to amend until recently—because of the questioning at his deposition in June 2021.  *See Ruben*, 2013 WL 6072998, at *2; *Hom, Tr. of Allen Ernest Hom Tr. Dated Aug. 19, 1992 v. RBB Bancorp*, 2019 WL 4266556, at *3 (S.D. Cal. Feb. 5, 2019) (finding no prejudice where new defendants were aware that their conduct was the basis for the lawsuit).  There is also still plenty of time for him to move to dismiss or for summary judgment if he is so inclined, as trial is not for several months (and Mr. Jones would stipulate to a shortened briefing schedule for any such motion if Officer Bueno would like).

Gibson, Dunn &
Crutcher LLP

**III.    Defendants Have Already Conceded The Sufficiency Of Mr. Jones' Claims, Defeating Any Assertion That Amendment Is Futile.**

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Banc of California, Inc. v. Farmers & Merchants Bank of Long Beach*, 2017 WL 2972338, at *1 (C.D. Cal. Apr. 19, 2017). "[D]enial [of a motion to amend] on this ground is rare." *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010). "[C]ourts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Id.*

Defendants cannot possibly show the proposed amendments are futile.  As the Ninth Circuit has noted, the "proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Webspectator Corp. v. Andre Tomas Da Silva Pereira Nascimento Parreira*, 2017 WL 10059269, at *2 (C.D. Cal. Oct. 31, 2017) (citation omitted).  Defendants have already conceded that the claims raised in the initial Complaint are sufficient to survive a 12(b)(6) challenge, as demonstrated by their decision to answer and proceed to discovery rather than moving to dismiss.  The Proposed FAC raises the same claims and legal theories as the initial Complaint.  All the Proposed FAC does differently is add Officer Bueno as John Doe 1 and add even ***more*** factual allegations to the ones Defendants already conceded were sufficient when they decided to answer.  *See, e.g.*, *Rosenblum v. Blackstone*, 2020 WL 1049916, at *9 (C.D. Cal. Jan. 22, 2020) (denying post-answer motion to dismiss); *Townsend Farms v. Goknur Gida*, 2016 WL 10570248, at *6 (C.D. Cal. Aug. 17, 2016) ("allow[ing] a defendant a fresh opportunity to bring a 12(b)(6) motion to dismiss as to claims raised by a prior—answered—complaint would undermine" Rule 12).

Officer Bueno would have no basis to oppose amendment on futility grounds

either.  Any claim that Mr. Jones mistook his identity or that his shooting was somehow justified is a defense for trial.  *See Lopez v. Cook*, 2015 WL 881624, at *1 (E.D. Cal. Mar. 2 2015).  Nor could Officer Bueno invoke qualified immunity at this phase (or any other).  The Ninth Circuit has repeatedly held that conduct like Officer Bueno's violates the Constitution, and that it would be unreasonable for an officer in that situation to believe otherwise.  *See*, *e.g.*, *Nelson v. City of Davis*, 685 F.3d 867, 885 (9th Cir. 2012) ("[S]hooting an individual with a projectile . . . that was also known to pose a greater risk of harm if it impacted the eye—and that did impact the victim's eye—[i]s unreasonable . . . [where] the target was suspected of no crime, only passively resisted officers, and posed a minimal risk of harm.").  To use the Ninth Circuit's words:

> Every police officer should know that it is objectively unreasonable to shoot . . . an unarmed man who: has committed no serious offense, . . . has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals.

*Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001).

## CONCLUSION

For the foregoing reasons, Mr. Jones' motion should be granted.


Dated:  November 12, 2021          GIBSON, DUNN & CRUTCHER LLP


                                   By:  */s/ Orin Snyder*
                                   _____

                                        Orin Snyder
                                        Attorney for Plaintiff