1  GIBSON, DUNN & CRUTCHER LLP          LAUREN M. BLAS, SBN 296823
2  ORIN SNYDER (*pro hac vice*)            LBlas@gibsondunn.com
     OSnyder@gibsondunn.com                TIMOTHY D. BICHE, SBN 293363
   KATHERINE MARQUART, SBN 248043           TBiche@gibsondunn.com
3    KMarquart@gibsondunn.com              COURTNEY M. JOHNSON, SBN 324331
   KARIN PORTLOCK (*pro hac vice*)          CJohnson2@gibsondunn.com
4    KPortlock@gibsondunn.com              ARIANA H. SANUDO, SBN 324361
   LEE R. CRAIN (*pro hac vice*)            ASanudo@gibsondunn.com
5    LCrain@gibsondunn.com                 333 South Grand Avenue, Suite 4600
   MARK J. CHERRY (*pro hac vice*)         Los Angeles, CA  90071-3197
6    MCherry@gibsondunn.com                Tel.: 213.229.7000
   200 Park Avenue                         Fax: 213.229.7520
7  New York, NY 10166-0193
   Tel.: 212.351.4000
8  Fax: 212.351.4035

9
   MATTHEW S. KAHN, SBN 261679
10   MKahn@gibsondunn.com
   555 Mission Street, Suite 3000
11 San Francisco, CA  94105-0921

12  Attorneys for Plaintiff Deon Jones

13         IN THE UNITED STATES DISTRICT COURT

14       FOR THE CENTRAL DISTRICT OF CALIFORNIA

15  DEON JONES, an individual,          | **CASE NO. 2:20-CV-11147-FWS-SK**

16              Plaintiff,              | **PLAINTIFF'S MEMORANDUM
                                          OF CONTENTIONS OF FACT
17      v.                               AND LAW**

18  CITY OF LOS ANGELES, a municipal   | Judge:   Hon. Fred W. Slaughter
    entity, CHIEF MICHEL MOORE, in his   Complaint Filed:   December 9, 2020
19  official capacity as Chief of the Los Trial Date:   February 28, 2023
    Angeles Police Department, LOS
20  ANGELES POLICE DEPARTMENT, a
    municipal entity, and PETER BUENO,
21
22              Defendants.

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1
2

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  CONTENTIONS OF FACT ................................................................................ 4

III. SUMMARY OF CLAIMS AND DEFENSES ................................................. 8

    A.   Mr. Jones' Claims ...................................................................................... 8

    B.   Elements Required to Establish Mr. Jones' Claims ............................. 9

    C.   Description of Key Evidence in Support of Mr. Jones' Claims .............. 12

    D.   Summary of Officer Bueno's Affirmative Defenses .............................. 19

    E.   Elements Required to Establish Officer Bueno's Affirmative Defenses .......................................................................................................... 20

    F.   Evidence in Opposition to Officer Bueno's Affirmative Defenses ......... 21

IV.  ANTICIPATED EVIDENTIARY ISSUES .................................................... 24

V.   ANTICIPATED ISSUES OF LAW .................................................................. 27

VI.  BIFURCATION ................................................................................................... 27

VII. JURY TRIAL ....................................................................................................... 27

VIII. ATTORNEYS' FEES ......................................................................................... 28

IX.  ABANDONMENT OF ISSUES ........................................................................ 28

Plaintiff Deon Jones ("Mr. Jones") respectfully submits the following Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4 of the Central District of California and the Court's Order on Pretrial and Trial Procedures (Civil Case), dated June 9, 2022 (Dkt. 179).

## I.    INTRODUCTION

On the afternoon of May 30, 2020, following the murder of George Floyd, Mr. Jones was peacefully demonstrating in Los Angeles for racial justice.  Suddenly, without provocation or warning, Defendant Officer Peter Bueno shot Mr. Jones in the face with a "less-lethal" rubber bullet that tore through his skin and nearly blinded him.  The bullet hit Mr. Jones right below his eye, resulting in a severe laceration and several fractures to his face.  Had the bullet hit him just a hair lower or higher, he could have lost his eye or been killed.  Mr. Jones filed this lawsuit to hold Officer Bueno and the Los Angeles Police Department ("LAPD") legally accountable for their violation of his First, Fourth, and Fourteenth Amendment rights under the United States Constitution and analogous rights under the California Constitution.  Trial on Mr. Jones' claims against Officer Bueno is scheduled to begin before this Court on February 28, 2023.

The evidence leaves no doubt Officer Bueno was Mr. Jones' shooter.  The shooting was captured on a nearby LAPD officer's body-worn video camera.  It occurred at precisely 3:26 p.m.  Forensic analysis of the footage confirms Officer Bueno fired the 40mm round that hit Mr. Jones.  Eye-witness Niara Hill, who was standing near Mr. Jones when he was shot, saw Officer Bueno shoot Mr. Jones.  Even the LAPD has confirmed Officer Bueno was the shooter.  An internal investigation conducted by the LAPD concluded that Officer Bueno was the *only* officer to discharge a 40mm launcher at the exact place and time Mr. Jones was shot.  The LAPD's investigative report also states Officer Bueno then indiscriminately fired two more shots into the crowd.  But these additional shots were similarly unjustified, in direct violation of LAPD policy. The video footage corroborates Officer Bueno's deliberate acts of violence as well.

The evidence is clear that Officer Bueno's shooting of Mr. Jones was entirely

unwarranted.  Mr. Jones was engaging in fundamental, protected First Amendment activities when he was shot.  He was peacefully protesting and recording the police.  It is undisputed he posed no threat to anyone, was not carrying a weapon, and was not under arrest.  In fact, he was trying to figure out how to leave the protest when he was shot in the face.

In shooting Mr. Jones, who was standing peacefully in a sizeable crowd, Officer Bueno violated clear LAPD policy, which forbids an officer from *ever* firing indiscriminately into a crowd with a 40mm launcher, which is a target-specific weapon. To the contrary, the policy dictates that a 40mm launcher can *only* be fired when an officer reasonably believes the subject is violently resisting arrest or poses an immediate threat of violence or physical harm, and even in such situations, can never be directed above the torso, given the risk of serious injury or death that could result.

Officer Bueno's defense in this case is contradicted by the record evidence and lacks credibility.  And it has been a moving target.  In his first deposition, Officer Bueno said he had not fired his weapon in the time and place Mr. Jones was shot and did not mention a water bottle being thrown.  In his second deposition, when cornered by record evidence showing he had fired the bullet that hit Mr. Jones, Officer Bueno changed his story.  He invoked the water bottle defense, claiming he was justifiably shooting at a protester standing near Mr. Jones (but in no way affiliated with Mr. Jones) who Officer Bueno claims was in the process of throwing a clear plastic water bottle in his direction and then ran away.  Officer Bueno claims his shot was meant to stop that apparently imminent threat and that he hit the thrower in the abdomen.  But even Officer Bueno's belated water bottle defense is disproven here.  Unequivocal video evidence shows that Officer Bueno fired his weapon *after* a water bottle landed next to him—without causing him any harm.  In other words, a plastic bottle was sitting on the ground at the point in time when Officer Bueno shot the bullet (the first of three) that hit Mr. Jones in the face. Contrary to Officer Bueno's sworn deposition testimony, he shot no one in the abdomen, much less a water bottle thrower.  He aimed his gun into the crowd and shot Mr. Jones

directly in the face, without provocation.

Officer Bueno's decision to shoot Mr. Jones at that moment proves that Officer Bueno—at best—was trying to *punish* the water-bottle thrower through the deployment of unconstitutional force, not to guard against any imminent threat. *See Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990). And in any event, the Ninth Circuit has held—and the jury in this case should be instructed—that "general disorder" of other individuals in a crowd, including others throwing "bottles or other debris" at officers, cannot not justify the use of force against a peaceful person, *Nelson v. City of Davis*, 685 F.3d 867, 880–81 (9th Cir. 2012), like Mr. Jones.

This evidence will prove Officer Bueno's conduct violated Mr. Jones' rights under the United States and California Constitutions.

***1. Excessive Force.*** Officer Bueno violated Mr. Jones' Fourth Amendment rights by seizing Mr. Jones using excessive force. Officer Bueno seized Mr. Jones by shooting him in the face with a rubber bullet. Officer Bueno's use of force against Mr. Jones was unconstitutionally excessive, because it was not necessary to use any force against Mr. Jones at all. Mr. Jones undisputedly was peaceful throughout the day, and at the time of the shooting, was actually attempting to leave the protest. No valid excuse exists for Officer Bueno's assault on Mr. Jones. Ninth Circuit law is clear that unruly behavior of other protesters cannot justify an infringement of Mr. Jones' rights.

***2. Due Process.*** Officer Bueno also violated Mr. Jones' Fourteenth Amendment right to due process. By shooting Mr. Jones in the face, arbitrarily and for no rational reason, Officer Bueno acted in a manner that "shocks the conscience" in violation of the Fourteenth Amendment.

***3. First Amendment.*** Mr. Jones was engaging in core protected First Amendment activity at the time Officer Bueno shot him: he was peacefully protesting and recording matters of public interest. Officer Bueno shot Mr. Jones both to retaliate against him for exercising his First Amendment rights, and out of animosity for the police reform message Mr. Jones and others in the crowd were supporting. Officer Bueno's actions

throughout the day—which include laughing at, mocking, pointing his weapon at the heads of peaceful protesters, as well as shooting at other peaceful protesters—make clear Officer Bueno's shot was motivated by a dislike for Mr. Jones' speech. By shooting Mr. Jones, Officer Bueno trampled on Mr. Jones' First Amendment rights.

Officer Bueno's day of reckoning approaches. On February 28, Mr. Jones will begin presenting these facts to the jury, and will conclusively prove that Officer Bueno violated Mr. Jones' sacred constitutional rights.

## II.    CONTENTIONS OF FACT

Mr. Jones has dedicated his adult life to serving as a leader and voice for his communities. Mr. Jones is a former government official and public servant, having worked in a number of roles, including serving in then-Vice President Joe Biden's public engagement office, on the board of Colin Powell's America's Promise Alliance, as a Truman Scholar, and on a Washington D.C. Advisory Neighborhood Commission (becoming Washington D.C.'s youngest elected official at the time). He currently works as an artist and creative director. Named one of the most influential Black Americans in the country by EBONY Magazine in 2021 as part of their annual POWER 100 list, Mr. Jones has been featured by Rolling Stone Magazine, sold out concert halls at major museums such as the Massachusetts Museum of Contemporary Art, and delivered performances at Frieze Art Fair, Art Basel, and PACE Gallery. In addition, he has collaborated with numerous public figures to craft digital media projects focused on elevating the stories and experiences of marginalized groups. Through this work, Mr. Jones has cultivated his own public platform, which he uses to spread messages of inclusivity and equity through his social commentary and artistry.

On May 30, 2020, Mr. Jones participated in a pre-planned protest that began at Los Angeles' Pan Pacific Park. He arrived with his friend Niara Hill. Roughly thirty minutes after Mr. Jones arrived, the protest began to move west on 3rd Street away from the park, and Mr. Jones went along. Mr. Jones did not carry a weapon and never engaged in any violence against police, persons, or property. As the protesters moved east on 3rd

Gibson, Dunn & Crutcher LLP

4

Street, police met them in full riot gear, causing the scene to become increasingly chaotic.  Mr. Jones attempted to avoid the areas where the police response to the protesters was particularly violent.  But this proved impossible, as officers on all sides began shoving and battering peaceful protesters with batons and barraging them with less-lethal munitions, sometimes at point-blank range.

Officer Bueno was one of the LAPD officers on the ground.  His conduct that day was particularly disturbing.  Despite conveniently having his body camera turned off for four of the six-and-a-half hours he was on duty—in violation of LAPD policy—video captured Officer Bueno liberally deploying lethal and non-lethal force, mocking and disrespecting at protesters, and violating LAPD use-of-force policy at every turn. Officer Bueno repeatedly aimed his launcher at the heads of peaceful, non-threatening protesters standing with their hands up, despite knowing that a rubber bullet strike to the head could cause serious injury.  He shot maliciously at protesters standing on roofs who posed no danger to him, despite knowing that LAPD policy prohibits shooting at anyone on an elevated surface due to the risk of a serious (and potentially fatal) fall.  He did it anyway, blatantly disregarding his training over and over.  During his 25-year career with the LAPD leading up to May 30, 2020, Officer Bueno had fired a 40mm less-lethal launcher fewer than 10 times.  But on May 30, 2020, Officer Bueno fired 28 rounds at protesters in a roughly six-hour span.  In sharp contrast, the other two nearby officers who were equipped with 40mm launchers fired 10 rounds combined during the same period.

Pursuant to LAPD policy, the 40mm weapon that Officer Bueno used is a target-specific weapon designed to apprehend and control individuals that pose an imminent threat to the safety of officers or others.  It is not designed or meant for indiscriminate shooting into groups of people.  "Less-lethal" munitions are comprised of rubber, plastic, or composite materials not designed to kill, but nevertheless, these munitions are capable of and do cause fatal injuries:  a fact Officer Bueno does not dispute.  Unsurprisingly, then, LAPD policy—at least in writing—imposes strict limits on their use.  According

to LAPD policy, less-lethal launchers should be fired only when an LAPD officer has identified a "suspect or subject" who is "violently resisting arrest or poses an immediate threat of violence or physical harm." LAPD policy also prohibits the use of less-lethal projectiles to target the head, neck, face, eyes, or spine, unless lethal force is authorized. According to Sergeant Hoskins, a 34-year LAPD veteran who oversees *all* training for metropolitan division officers, including Officer Bueno, an officer should never fire indiscriminately into a crowd, under any circumstances, with any weapon. Yet Officer Bueno did just that.

When Mr. Jones and Ms. Hill witnessed the LAPD's violent response to the protest, they attempted to leave. They walked toward a parking lot next to a nearby Trader Joe's. Mr. Jones asked an LAPD officer how to safely leave the protest. He received no response. While Mr. Jones and Ms. Hill searched for an exit while recording the encroaching LAPD officers on their phones, an unknown person in the crowd behind Mr. Jones threw a clear plastic water bottle in the direction of the nearest LAPD officer boxing them in—Officer Bueno. It is undisputed Mr. Jones did not throw the bottle and was not affiliated with the thrower. It is also undisputed that the water bottle did not hit Officer Bueno or any other officer. Nonetheless, after the bottle landed next to him without causing him any harm, Officer Bueno aimed his weapon at Mr. Jones and shot him in the face with a rubber bullet, in direct violation of LAPD policy. Then, even after he saw his first bullet strike Mr. Jones, Officer Bueno paused, reloaded, and fired twice more into the crowd near Mr. Jones. Officer Bueno's body camera was conveniently turned off at this time. But the assault was witnessed by Ms. Hill and captured on the body camera of a nearby officer, Officer Nikole Bostillo.

After being shot in the face, Mr. Jones reeled backwards and tried to run. He was terrified and felt immense pain and ringing in his ears. After staggering into a narrow corridor leading away from the Trader Joe's parking lot, Mr. Jones collapsed on the sidewalk. He felt dizzy and was unable to get up. While he was lying on the ground, two good Samaritans attending the protest, including Erin Min, approached and offered

6

1  to provide first aid.  They then drove Mr. Jones and Ms. Hill to an urgent care facility

2  and ultimately to Cedars Sinai Emergency Room, where Mr. Jones received emergency

3  medical treatment for the severe injuries to his face.

4       Officer Bueno caused serious physical injuries to Mr. Jones.  The rubber bullet

5  left behind an open flesh wound in the form of a large crater on Mr. Jones' face.  Mr.

6  Jones feared he had suffered a concussion from the impact.  Mr. Jones' wounds required

7  an eight-hour stay at Cedars Sinai, where he received stitches for the laceration and was

8  diagnosed with fractures of the zygomatic arch and maxilla bone on his face.  Mr. Jones

9  had a follow-up appointment with an ophthalmologist who removed his stitches and

10 informed Mr. Jones that, had he been struck even millimeters from the injury site in

11 either direction, he likely would have been blinded or even killed.

12      Mr. Jones suffered lasting physical and psychological trauma as a result of the

13 shooting.  Mr. Jones suffered from intermittent tinnitus, dizziness, and headaches in the

14 days following the shooting.  He needed to take pain medications for five to six months.

15 His ophthalmologist warned Mr. Jones he was at risk of a fully detached retina and full

16 blindness should he ever suffer a similar head injury again:  a warning that prevented

17 Mr. Jones from attending subsequent protests that summer, despite wanting to.  Mr.

18 Jones also experienced nightmares stemming from the shooting which induced severe

19 headaches.  He has felt the loss of enjoyment of life and deep, profound grief.  Mr. Jones

20 feels betrayed by, anxious of, and fearful of law enforcement, is made nervous by loud

21 noises, and no longer feels safe participating in protests or other public demonstrations.

22      After Mr. Jones filed suit, the City of Los Angeles, the LAPD, and LAPD Chief

23 Michel Moore (collectively, the "Municipal Defendants") produced the report of the

24 LAPD's Force Investigation Unit into Mr. Jones' shooting ("FID Report").  The FID

25 Report confirmed (1) Officer Bueno discharged his 40mm launcher three times in the

26 exact place and at the exact time Mr. Jones was struck with a 40mm round and (2) no

27 other officer besides Officer Bueno was in the vicinity with a 40mm weapon when Mr.

28 Jones was shot.  In other words, the LAPD's own FID Report left no doubt Officer

1  Bueno was the shooter.

## III.    SUMMARY OF CLAIMS AND DEFENSES

**A.    Mr. Jones' Claims**

Mr. Jones will pursue the following claims at trial:

<u>Claim 1</u>:  Officer Bueno violated Mr. Jones' rights under the First Amendment to the United States Constitution when he shot Mr. Jones in the face with a rubber bullet by:  (1) retaliating against Mr. Jones for engaging in protected First Amendment activities; (2) discriminating against Mr. Jones because of his viewpoint; (3) violating Mr. Jones' right to record public activities of the police; and (4) unlawfully restricting Mr. Jones' right to protest in a traditional public forum.  (Counts I, IV, and V, Dkt. 90-2 ("FAC").)

<u>Claim 2</u>:  Officer Bueno violated Mr. Jones' rights under the Fourth Amendment to the United States Constitution by shooting Mr. Jones in the face with a rubber bullet while Mr. Jones was peacefully protesting.  That use of force was excessive and unjustified.  (Counts II and VII, FAC.)

<u>Claim 3</u>:  Officer Bueno violated Mr. Jones' due process rights under the Fourteenth Amendment to the United States Constitution by shooting Mr. Jones in the face with a rubber bullet while Mr. Jones was peacefully protesting.  That use of force shocks the conscience.  (Counts III and VI, FAC.)

<u>Claim 4</u>:  Officer Bueno violated Mr. Jones' rights under Sections 2 and 3 of Article 1 of the California Constitution when he shot Mr. Jones in the face with a rubber bullet.[1]  (Counts IV and V, FAC.)

<u>Claim 5</u>:  Officer Bueno violated Mr. Jones' rights under Section 7 of Article 1 of the California Constitution by shooting Mr. Jones in the face with a rubber bullet while Mr. Jones was peacefully protesting.  That use of force was excessive and unjustified.

---

[1]  For purposes of this lawsuit, Mr. Jones' state and federal claims rise and fall together.  In other words, he does not plan to contend that, if the jury concludes his federal constitutional rights were not violated, his state rights still might have been.

(Count VI, FAC.)

Claim 6:  Officer Bueno violated Mr. Jones' rights under Section 13 of Article 1 of the California Constitution by shooting Mr. Jones in the face with a rubber bullet while Mr. Jones was peacefully protesting.  That use of force shocks the conscience. (Count VII, FAC.)

**B.    Elements Required to Establish Mr. Jones' Claims**
**Elements of Claim 1:  First Amendment Violations**

**1.    First Amendment Retaliation**

(1)  Mr. Jones was engaged in a constitutionally protected activity;

(2)  Officer Bueno shooting Mr. Jones in the face would chill a person of ordinary firmness from continuing to engage in the protected activity; and

(3)  Mr. Jones' protected activity was a substantial or motivating factor in Officer Bueno's shooting of Mr. Jones.

*See* Model Civ. Jury Inst. 9th Cir. 9.11.

**2.    Viewpoint Discrimination**

(1)  Mr. Jones was engaged in a constitutionally protected activity;

(2)  Officer Bueno shooting Mr. Jones in the face would chill a person of ordinary firmness from continuing to engage in the protected activity; and

(3)  Mr. Jones' protected activity was a substantial or motivating factor in Officer Bueno's shooting of Mr. Jones.

*See id.*

**3.    Unlawful Restriction on Speech in Public Forum**

Mr. Jones will succeed on this claim if he satisfies *any* of the following three tests:

**Test 1**

(1)  Mr. Jones must prove that Officer Bueno imposed a restriction on the time, place, and manner of expression in a traditional public forum.

(2)  If Mr. Jones proves Element (1), Officer Bueno must prove that his speech restrictions on Mr. Jones:  (i) were content-neutral; (ii) were narrowly tailored to

serve a significant government interest; and (iii) left open ample alternative channels for communication of the information.

*See, e.g.*, *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

**Test 2**

(1) Mr. Jones must prove that Officer Bueno imposed a restriction on the content of expression in a traditional public forum.

(2) If Mr. Jones proves Element (1), Officer Bueno must prove that his speech restrictions on Mr. Jones were (i) necessary to serve a compelling state interest and (ii) narrowly drawn to achieve that end.

*See id.*

**Test 3**

(1) Mr. Jones must prove that Officer Bueno imposed a restriction on the viewpoint of expression in a traditional public forum.

*See id.*

**4.      Violation of Right to Record**

> **a.      Retaliation for Exercising Right to Record**

(1) Mr. Jones was recording matters of public interest;

(2) Officer Bueno shooting Mr. Jones in the face would chill a person of ordinary firmness from continuing to engage in the protected activity; and

(3) Mr. Jones' recording activity was a substantial or motivating factor in Officer Bueno's shooting of Mr. Jones.

*See* Model Civ. Jury Inst. 9th Cir. 9.11.

> **b.      Unlawful Restriction on Right to Record**

Mr. Jones will succeed on this claim if he satisfies *any* of the following three tests:

**Test 1**

(1) Mr. Jones must prove that Officer Bueno imposed a restriction on the time, place, and manner of Mr. Jones' right to record matters of public interest in a

traditional public forum.

(2)  If Mr. Jones proves Element (1), Officer Bueno must prove that his speech restrictions on Mr. Jones:  (i) were content-neutral; (ii) were narrowly tailored to serve a significant government interest; and (iii) left open ample alternative channels for communication of the information.

*See, e.g.*, *Perry Educ. Ass'n*, 460 U.S. at 45.

**Test 2**

(1)  Mr. Jones must prove that Officer Bueno imposed a restriction on the content of what Mr. Jones could record in a traditional public forum.

(2)  If Mr. Jones proves Element (1), Officer Bueno must prove that his speech restrictions on Mr. Jones were (i) necessary to serve a compelling state interest; and (ii) narrowly drawn to achieve that end.

*See, e.g.*, *id.*

**Test 3**

(1)   Mr. Jones must prove that Officer Bueno imposed a restriction on the viewpoint of expression in a traditional public forum.

*See id.*

**<u>Elements of Claim 2:  Fourth Amendment Violation</u>**

(1)  Officer Bueno seized Mr. Jones' person;

(2)  In seizing Mr. Jones' person, Officer Bueno acted intentionally; and

(3)  The seizure was unreasonable, considering factors including:  (1) the severity of the crime at issue, if any; (2) whether Mr. Jones posed an immediate threat to the safety of Officer Bueno or to others; (3) whether Mr. Jones was actively resisting arrest or attempting evade arrest by flight; (4) the amount of time Officer Bueno had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period; (5) the type and amount of force inflicted; (6) the availability of alternative methods to subdue Mr. Jones; (7) the number of lives at risk (motorists, pedestrians, police officers) and

Gibson, Dunn &
Crutcher LLP

the parties' relative culpability; (8) whether it was practical for Officer Bueno to give warning of the imminent use of force, and whether such warning was given; (9) whether a reasonable officer would have or should have accurately perceived a mistaken fact; (10) whether there was probable cause for a reasonable officer to believe that Mr. Jones had committed a crime involving the infliction or threatened infliction of serious physical harm; and (11) the severity of injuries Mr. Jones experienced.

*See* Model Civ. Jury Inst. 9th Cir. 9.20, 9.25; *Nelson*, 685 F.3d at 877–83.

### **Element of Claim 3:  Fourteenth Amendment Violation**

(1)  Officer Bueno engaged in an abuse of power that shocked the conscience, considering factors including:  (i) the relationship between the need for the use of force and the amount of force used; (ii) the extent of Mr. Jones' injury; (iii) any effort made by Officer Bueno to temper or to limit the amount of force; (iv) the severity of the security problem at issue; (v) the threat reasonably perceived by Officer Bueno; and (vi) whether Mr. Jones was actively resisting.

*See Kingsley*, 576 U.S. at 394–97.

**C.    Description of Key Evidence in Support of Mr. Jones' Claims**

**1.    Officer Bueno Violated Mr. Jones' First Amendment Rights**

**a.    First Amendment Retaliation**

**Element 1: Mr. Jones was engaged in a constitutionally protected activity**

Mr. Jones was engaged in several forms of protected activity when Officer Bueno shot him in the face with a rubber bullet.  First, Mr. Jones was peacefully protesting the murder of George Floyd at the hands of Minneapolis police officers on May 30, 2020. Mr. Jones did not pose a threat, was not carrying a weapon, and was peaceful throughout the day.  Second, when he was shot in the face, Mr. Jones was recording the police using his phone's camera and the Instagram Live application.

This element will be established through the following key evidence:  (1) Mr. Jones' testimony; (2) witness testimony, including Niara Hill and Officer Bueno; (3)

Gibson, Dunn & Crutcher LLP

clips and stills from body-worn video footage of LAPD officers; and (4) documentary evidence, including the FID Report, and an Instagram Live video of the protest that Mr. Jones took just moments after he was shot in the face.

**Element 2: Officer Bueno shooting Mr. Jones in the face would chill a person of ordinary firmness from continuing to engage in the protected activity**

Mr. Jones is chilled from further protesting because he fears being reinjured. His ophthalmologist told him that if he had been struck in a slightly different place than where he ultimately was, he could have been blinded or killed. Because of his injuries and lasting trauma, Mr. Jones has not participated in any protest activity since May 30, 2020.

This element will be established through the following key evidence: (1) Mr. Jones' testimony; (2) witness testimony, including Niara Hill, Erin Min, and Dr. Kenneth Corre; (3) clips and stills from body-worn video footage of LAPD officers; and (4) documentary evidence, including contemporaneous text messages from Mr. Jones, Mr. Jones' medical records, the FID Report, and the LAPD's Internal Affairs Division investigation report.

**Element 3: Mr. Jones' protected activity was a substantial or motivating factor in Officer Bueno's shooting of Mr. Jones**

Officer Bueno's actions were substantially motivated by Mr. Jones' protected speech activity of peaceful protesting and recording the protest. Officer Bueno indiscriminately used force on May 30, 2020 by shooting rubber bullets at numerous protesters, not just ones seemingly provoking the police, in violation of LAPD policy. In the entirety of his 25-year career with the LAPD leading up to May 30, 2020, Officer Bueno had fired a 40mm less-lethal launcher fewer than 10 times. Yet, on May 30, 2020, Officer Bueno fired no fewer than 28 rounds at protesters within a roughly six-hour window. Officer Bueno was captured on film mocking and laughing at protesters, shooting at—and hitting—a civilian on the roof of a building, and aiming at protesters' heads and necks.

This element, along with the damages Mr. Jones suffered from being shot in the face, including the costs for his required medical care, will be established through the following key evidence:  (1) Mr. Jones' testimony; (2) witness testimony, including Niara Hill, Dr. Kenneth Corre, and Officer Bueno; (3) deposition testimony of LAPD Sergeant Hoskins; (4) expert testimony, including Jason Latham; (5) clips and stills from body-worn video footage of LAPD officers; and (6) documentary evidence, including the FID Report and the daily logs of LAPD officers that attended the May 30, 2020 protest.

### b.    Viewpoint Discrimination

**Elements 1, 2, and 3: (1) Mr. Jones was engaged in a constitutionally protected activity; (2) Officer Bueno shooting Mr. Jones in the face would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) Mr. Jones' protected activity was a substantial or motivating factor in Officer Bueno's shooting of Mr. Jones**

The facts and key evidence to establish these elements are identical to those discussed in the prior section.  *See* § III.C.1.a, *supra*.

### c.    Unlawful Restriction on Speech in Public Forum

#### (1)    Test 1

**Element 1:  Mr. Jones must prove that Officer Bueno imposed a restriction on the time, place, and manner of expression in a traditional public forum**

Officer Bueno imposed a restriction on the time, place, and manner of expression in a traditional public forum by shooting Mr. Jones in the face.

This element will be established through the key evidence described in Section III.C.1.a, *supra*.

**Element 2: If Mr. Jones proves Element (1), Officer Bueno must prove that his speech restrictions on Mr. Jones:  (i) were content-neutral; (ii) were narrowly tailored to serve a significant government interest; and (iii) left open ample alternative channels for communication of the information**

14

Gibson, Dunn &
Crutcher LLP

Officer Bueno's violence against protesters throughout the day on May 30, 2020, including laughing at, mocking, and pointing his weapon at the heads of peaceful individuals protesting police brutality, supports an inference that his actions, including shooting Mr. Jones in the face, were in response to the content of Mr. Jones' speech, including his recording of officers and protesting police brutality.

Officer Bueno shooting Mr. Jones in the face was not a narrowly tailored restriction on speech that served any government interest. Mr. Jones did not pose a threat to Officer Bueno or any other person at the time Officer Bueno shot him in the face, nor was he under arrest. There was no justification for shooting Mr. Jones. Further, Officer Bueno's conduct was in blatant violation of LAPD policy, including policy forbidding firing 40mm less-lethal launchers where an officer lacks reasonable belief that a subject is violently resisting arrest or poses an immediate threat of violence or physical harm.

When Officer Bueno shot Mr. Jones in the face with a rubber bullet, Mr. Jones was seriously injured. Mr. Jones fled the protest, overwhelmed with pain, fear, and confusion, and was promptly taken to the emergency room. He received stitches for the laceration and was diagnosed with fractures of the zygomatic arch and maxilla bone on his face. He was not able to return to the protest. Officer Bueno left Mr. Jones with no alternative channels of communication to peacefully protest or record matters of public interest when he shot Mr. Jones in the face with a rubber bullet.

This element will be established through the key evidence described in Section III.C.1.a, *supra*.

### (2) Test 2

**Elements 1 and 2: (1) Mr. Jones must prove that Officer Bueno imposed a restriction on the content of expression in a traditional public forum; and (2) if Mr. Jones proves Element (1), Officer Bueno must prove that his speech restriction on Mr. Jones was (i) necessary to serve a compelling state interest and (ii) narrowly drawn to achieve that end**

The facts and key evidence to establish this element are identical to those

discussed in the prior section. *See* § III.C.1.c.(1), *supra*.

### (3)    Test 3

**Mr. Jones must prove that Officer Bueno imposed a restriction on the viewpoint of expression in a traditional public forum**

The facts and key evidence to establish this element are identical to those discussed in the prior section. *See* § III.C.1.c.(1), *supra*.

### d.    Violation of Right to Record

#### (1)    Retaliation for Exercising Right to Record

#### Element 1: Mr. Jones was recording matters of public

On May 30, 2020, Mr. Jones was recording the police using his phone's camera and the Instagram Live application.

This element will be established through the following key evidence: (1) Mr. Jones' testimony; (2) witness testimony, including Niara Hill; (3) clips and stills from body-worn video footage of LAPD officers; and (4) documentary evidence, including the FID Report and an Instagram Live video of the protest that Mr. Jones took just moments after he was shot in the face.

#### Element 2: Officer Bueno shooting Mr. Jones in the face would chill a person of ordinary firmness from continuing to engage in the protected activity

The facts and key evidence to establish this element are identical to those discussed Section III.C.1.a, *supra*.

#### Element 3: Mr. Jones' recording activity was a substantial or motivating factor in Officer Bueno's shooting of Mr. Jones

The facts and key evidence to establish this element are identical to those discussed Section III.C.1.a, *supra*.

#### (2)    Unlawful Restriction on Right to Record

#### (a)    Test 1

#### Element 1: Mr. Jones must prove that Officer Bueno imposed a restriction on the time, place, and manner of Mr. Jones' right to record matters of public

16

Gibson, Dunn &
Crutcher LLP

**interest in a traditional public forum.**

Officer Bueno imposed a restriction on the time, place, and manner of Mr. Jones' right to record matters of public interest in a traditional public forum by shooting Mr. Jones in the face.

This element will be established through the key evidence described in Section III.C.1.a, *supra*.

**Element 2: If Mr. Jones proves Element (1), Officer Bueno must prove that his speech restrictions on Mr. Jones:  (i) were content-neutral; (ii) were narrowly tailored to serve a significant government interest; and (iii) left open ample alternative channels for communication of the information.**

The facts and key evidence to establish this element are identical to those discussed in Section III.C.1.c.(1), *supra*.

### (b)    Test 2

**Element 1: Mr. Jones must prove that Officer Bueno imposed a restriction on the content of what Mr. Jones could record in a traditional public forum.**

The facts and key evidence to establish this element are identical to those discussed in Section III.C.1.c.(1), *supra*.

**Element 2: If Mr. Jones proves Element (1), Officer Bueno must prove that his speech restriction on Mr. Jones was (i) necessary to serve a compelling state interest; and (ii) narrowly drawn to achieve that end.**

The facts and key evidence to establish this element are identical to those discussed in Section III.C.1.c.(1), *supra*.

### (c)    Test 3

**Element: Mr. Jones must prove that Officer Bueno imposed a restriction on the viewpoint of expression in a traditional public forum.**

The facts and key evidence to establish this element are identical to those discussed in Section III.C.1.c.(1), *supra*.

## 2.    Officer Bueno Violated Mr. Jones' Fourth Amendment Rights

**Element 1: Officer Bueno seized Mr. Jones' person**

Officer Bueno seized Mr. Jones by shooting him in the face with a rubber bullet, while Mr. Jones was peacefully protesting and recording the police.  Mr. Jones will testify that he was shot in the face with a rubber bullet.  Witnesses, expert testimony, body-worn video, and the LAPD's own FID Report will corroborate that Mr. Jones was shot by a rubber bullet and Officer Bueno was the shooter.  Ms. Hill, an eyewitness, saw Officer Bueno raise his less-lethal launcher, aim it in the direction of Mr. Jones, and then heard the sound of the shot being fired and the subsequent impact of the bullet on Mr. Jones' face.  Ms. Hill watched as Mr. Jones clutched his face and began running away before falling to his hands and knees.  After the shooting, Mr. Jones was transported to Cedars Sinai Emergency Room, where he received stitches and was informed his face was fractured.  Body-worn video shows Officer Bueno shooting Mr. Jones in the face.

This element will be established through the following key evidence:  (1) Mr. Jones' testimony; (2) witness testimony, including Niara Hill, Erin Min, Dr. Kenneth Corre, and Officer Bueno; (3) expert testimony, including Mr. Jones' experts, Jason Latham and Clark Kimerer; (4) clips and stills from body-worn video footage of LAPD officers; and (5) documentary evidence, including Mr. Jones' contemporaneous text messages, photos, and videos, along with the FID Report.

**Element 2: In seizing Mr. Jones' person, Officer Bueno acted intentionally**

Officer Bueno intentionally fired his 40mm less-lethal launcher in the direction of the crowd in which Mr. Jones was standing.  It was not an accident.

This element will be established through the key evidence described in Element 1 of Section III.C.2, *supra*.

**Element 3: The seizure was unreasonable**

It was unreasonable for Officer Bueno to shoot Mr. Jones in the face.  The shooting was entirely unprovoked and unjustified, as Mr. Jones was peacefully protesting.  Officer Bueno's shooting violated LAPD policy prohibiting the firing of

18

Gibson, Dunn &
Crutcher LLP

random shots into groups of people with a target-specific 40mm launcher and requiring that an officer only fire a less-lethal launcher when the officer has identified an individual who is either violently resisting arrest or poses an immediate threat of violence or physical harm. Mr. Jones was not resisting arrest and did not pose a threat to anyone. Instead, Mr. Jones was actively looking for safe avenues to exit the protest. The level of force used was unreasonable: it caused Mr. Jones serious physical injury and mental trauma. Officer Bueno should have provided a warning before firing his launcher at Mr. Jones, but no warning was given. Officer Bueno made no effort to limit the amount of force used, and in fact fired two additional shots into the crowd after he shot Mr. Jones in the face. When Officer Bueno fired his weapon, no protester posed an imminent threat of violence. That another protester threw a clear, plastic, empty water bottle in the general direction of Officer Bueno did not justify the use of potentially lethal force, especially since the water bottle did not hit Officer Bueno or any other officer.

This element will be established through the key evidence described in Element 1 of Section III.C.2, *supra*, in addition to the deposition testimony of LAPD Sergeant Hoskins.

### 3. Officer Bueno Violated Mr. Jones' Fourteenth Amendment Rights
**Element: Officer Bueno engaged in conduct that shocked the conscience**

The facts and key evidence to establish this element are identical to those discussed Section III.C.2, *supra*.

## D. Summary of Officer Bueno's Affirmative Defenses

Officer Bueno raises six "affirmative defenses" in his Amended Answer: (1) Officer Bueno is protected from liability under the doctrine of qualified immunity; (2) Mr. Jones failed to mitigate his damages and is thus himself a direct and proximate cause of any damages he alleges; (3) to the extent Officer Bueno is sued in his official capacity, those claims are duplicative of Mr. Jones' claims against the City of Los Angeles and LAPD Chief Michel Moore; (4) to the extent Officer Bueno is sued in his official

capacity, he is immune from punitive damages; and (5) Mr. Jones is unable to meet the requirements of injunctive relief. Officer Bueno also reserved his right to amend his answer to add additional affirmative defenses, though to date, he has not done so. *See* Dkt. 233 at 4–5.

### E.    Elements Required to Establish Officer Bueno's Affirmative Defenses

The following elements are required to establish Officer Bueno's affirmative defenses.

### 1.    First Affirmative Defense:  Qualified Immunity

This defense requires a showing either that:  (1) Officer Bueno did not violate Mr. Jones' constitutional rights under the First, Fourth, and Fourteenth Amendments; or (2) Mr. Jones' constitutional rights were not clearly established at the time Officer Bueno shot Mr. Jones in the face. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc); *see also* Model Civ. Jury Inst. 9th Cir. 9.34.

### 2.    Second Affirmative Defense:  Failure to Mitigate

This defense requires a showing by a preponderance of evidence:  (1) that Mr. Jones failed to use reasonable efforts to mitigate damages; and (2) the amount by which damages would have been mitigated. *See* Model Civ. Jury Inst. 9th Cir. 5.3.

### 3.    Third Affirmative Defense:  Duplicative Claims

"Duplicative claims" is not an affirmative defense. *See 578539 B.C., Ltd. v. Kortz*, 2014 WL 12572679, at *8 (C.D. Cal. Oct. 16, 2014). In any event, the Court dismissed Mr. Jones' claims against Officer Bueno in his official capacity, *see* Dkt. 261 at 33–34, so this affirmative defense is no longer applicable.

### 4.    Fourth Affirmative Defense:  Immune from punitive damages in Officer Bueno's official capacity

This defense requires a showing that Officer Bueno was sued in his official capacity. *See Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). Because the Court dismissed Mr. Jones' claims against Officer Bueno in his official capacity, *see* Dkt. 261 at 33–34, this affirmative defense is no longer applicable.

5.    **Fifth Affirmative Defense:  Unable to meet injunctive relief requirements**

This defense requires a showing that: (1) Mr. Jones has not suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are adequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is not warranted; or (4) the public interest would be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Mr. Jones is not seeking injunctive relief against Officer Bueno, so this affirmative defense is inapplicable to this phase of the case.

6.    **Sixth Affirmative Defense:  Reservation to amend**

"An attempt to reserve affirmative defenses for a future date is not a proper affirmative defense in itself."  *United States v. Glob. Mortg. Funding, Inc.*, 2008 WL 5264986, at *5 (C.D. Cal. May 15, 2008).  If Officer Bueno wants to amend his answer to add additional affirmative defenses, he may do so only with Mr. Jones' consent or with leave of the Court.  *See* Fed. R. Civ. P. 15(a)(2).

F.    **Evidence in Opposition to Officer Bueno's Affirmative Defenses**

1.    **First Affirmative Defense:  Qualified Immunity**

The doctrine of qualified immunity is a question for the Court, not the jury. *Morales v. Fry*, 873 F.3d 817, 822–25 (9th Cir. 2017); *see also Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991).  The parties have stipulated that no party or counsel can reference or make arguments regarding qualified immunity in the presence of the jury.  In any event, Officer Bueno is not entitled to qualified immunity on Mr. Jones' First, Fourth, and Fourteenth Amendment claims.  As discussed *supra*, Officer Bueno violated Mr. Jones' First, Fourth, and Fourteenth Amendment rights.  *See* § III.C, *supra*. It has long been "clearly established" that "the firing of a projectile that risked causing serious harm, in the direction of non-threatening individuals" violates the Constitution. *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021); *Nelson*, 685 F.3d at 886.

For Mr. Jones' First Amendment claims, the Ninth Circuit has time and again

1    established that "enjoining or preventing First Amendment activities before

2    demonstrators have acted illegally or before the demonstration poses a clear and present

3    danger is presumptively a First Amendment violation." *Collins v. Jordan*, 110 F.3d

4    1363, 1371 (9th Cir. 1996).  And the Ninth Circuit has consistently "condemn[ed] 'any

5    action to punish or deter'" lawful speech activity.  *Lopez v. City of Glendora*, 811 F.

6    App'x 1016, 1019 (9th Cir. 2020) (quoting *Duran v. City of Douglas*, 904 F.2d 1372,

7    1378 (9th Cir. 1990)).  In light of the Ninth Circuit's long tradition of protecting citizens

8    against government retaliation, Officer Bueno cannot contend he did not have "fair

9    warning" that indiscriminately firing less-lethal projectiles at protesters is

10    unconstitutional.  *Sampson v. Cnty. of L.A.*, 974 F.3d 1012, 1019 (9th Cir. 2020).

11         As for Mr. Jones' Fourth Amendment claim, the Ninth Circuit held nearly a

12    decade ago that conduct substantially identical to Officer Bueno's would violate the

13    Fourth Amendment.  In *Nelson*, the Ninth Circuit held:  "a reasonable officer would have

14    been on notice that . . . the firing of a projectile that risked causing serious harm, in the

15    direction of non-threatening individuals . . . , would constitute unreasonable force in

16    violation of the Fourth Amendment."  685 F.3d at 886.

17         Regarding Mr. Jones' Fourteenth Amendment claim, Ninth Circuit precedent, like

18    *Nelson*, and LAPD policy banning the firing of rubber bullets toward sensitive areas

19    such as Mr. Jones' face make clear that "a reasonable officer" would know "that his

20    conduct was unlawful in the situation he confronted."  That is "dispositive" on the issue

21    of qualified immunity.  *Aguilera v. Baca*, 394 F. Supp. 2d 1203, 1224 (C.D. Cal. 2005),

22    *aff'd*, 510 F.3d 1161 (9th Cir. 2007); *see also Nelson*, 685 F.3d at 883–84; *Deorle v.

23    Rutherford*, 272 F.3d 1272, 1285–86 (9th Cir. 2001) ("No reasonable officer could have

24    believed that [the officer's] action in shooting [the victim] with the 'less lethal' lead-

25    filled beanbag round was appropriate or lawful.").  Further, the mere fact the legal

26    framework shifts from the Fourth Amendment to the Fourteenth does not render an

27    official immune.  *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998); *see

28    also Hernandez v. City of San Jose*, 897 F.3d 1125, 1138 n.2 (9th Cir. 2018); *Browder*

*v. City of Albuquerque*, 787 F.3d 1076, 1082–83 (10th Cir. 2015) (Gorsuch, J.).

Mr. Jones will defeat this defense using the same evidence described in Section III.C, *supra*.

### 2.    Second Affirmative Defense:  Failure To Mitigate

There is no evidence that Mr. Jones could or should have mitigated damages he suffered from Officer Bueno shooting him in the face.  Officer Bueno's failure to mitigate defense fails as a matter of law and therefore should not go to the jury.  Mr. Jones intends to move to exclude any evidence that purportedly demonstrates a failure to mitigate damages, since, under the collateral source rule, such "evidence" cannot be used at trial to reduce Officer Bueno's liability for damages.  *See McLean v. Runyon*, 222 F.3d 1150, 1155–56 (9th Cir. 2000) ("Under the collateral source rule, benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages." (cleaned up)).  Mr. Jones will also oppose any jury instruction regarding mitigation.

### 3.    Third Affirmative Defense:  Duplicative Claims

This defense fails as a matter of law because it is not in fact an affirmative defense. In any event, because the Court dismissed Mr. Jones' claims against Officer Bueno in his official capacity, *see* Dkt. 261 at 33–34, this affirmative defense is no longer applicable.

### 4.    Fourth Affirmative Defense:  Immune From Punitive Damages In Officer Bueno's Official Capacity

Because the Court dismissed Mr. Jones' claims against Officer Bueno in his official capacity, *see* Dkt. 261 at 33–34, this affirmative defense is no longer applicable.

### 5.    Fifth Affirmative Defense:  Unable To Meet Injunctive Relief Requirements

Mr. Jones is not seeking injunctive relief against Officer Bueno so this affirmative defense is inapplicable at this stage of the case.  Mr. Jones looks forward to establishing his entitlement to injunctive relief against the Municipal Defendants at a second phase

Gibson, Dunn &
Crutcher LLP

of trial to be held a later date.

**6.      Sixth Affirmative Defense:  Reservation to amend**

Officer Bueno has not sought leave to add affirmative defenses pursuant to Rule 15, so this affirmative defense is not applicable.  *See* Fed. R. Civ. P. 15.

## IV.    ANTICIPATED EVIDENTIARY ISSUES

The parties have reached agreement on a number of evidentiary issues, including: (1) the parties and their counsel shall not reference or make argument about qualified immunity or whether or when law was clearly established to the jury at any point; (2) Officer Bueno's counsel shall not make reference to any purported inexperience of Mr. Jones' attorneys in front of the jury; and (3) Officer Bueno shall not introduce evidence or make argument to the jury concerning Officer Bueno's professional reputation, subject to Mr. Jones not opening the door to such evidence by putting Officer Bueno's professional reputation at issue.

Mr. Jones has filed the following motions *in limine*:

1.      To exclude (1) evidence of third-party acts or scenes of misconduct at the May 30, 2020 protest, including an MTA bus that was surrounded and vandalized, looting, cars on fire, and isolated incidents of misconduct against police officers by unknown persons; and (2) characterizations of the May 30, 2020 protest as a "riot" or any similarly inflammatory term.

2.      To prohibit Officer Bueno from introducing any evidence or argument about: (1) any dispersal order(s) issued on May 30, 2020, and (2) any allegation that Mr. Jones committed a crime by purportedly failing to comply with a dispersal order.

3.      To prohibit evidence or argument concerning Mr. Jones' involvement in a mass arrest on May 29, 2020.

4.      To exclude any evidence or argument regarding (1) the Black Lives Matter movement and/or its affiliated organizations (together "BLM"), including any allegations of misconduct on BLM's part; and (2) anti-police rhetoric, such as chants calling for "death to the police," "abolition" of the police, or "defunding" the police.

Gibson, Dunn &
Crutcher LLP

24

5.    To preclude Officer Bueno's expert witness, James W. Borden, from opining at trial on (1) the cause of Mr. Jones' injuries, and (2) the academic field of behavioral science, including the purported characteristics and limits of human perception, reaction times, and attention, as well as the theories of "consequentialism" and "time compression."

6.    To exclude any evidence or argument concerning any donations or donation offers Mr. Jones received to cover expenses he incurred because Officer Bueno shot him in the face on May 30, 2020.

7.    To preclude evidence or argument regarding whether Mr. Jones has filed tax returns for the years 2020 and 2021.

8.    To exclude attorney edited exhibits marked by Officer Bueno's counsel.

9.    To preclude Officer Bueno from introducing any evidence or argument regarding Gibson Dunn's joint representation of Mr. Jones, Ms. Hill, or any other third-party witness in this case.

10.    To exclude evidence or argument concerning the size of Mr. Jones' *pro bono* legal team at Gibson Dunn.

Officer Bueno informed Mr. Jones he intends to file the following motions *in limine*:

1.    To exclude all matters that were stricken from Mr. Jones' amended complaint by Judge Wilson.

2.    To exclude references to the deaths of other people at the hands of the police, other than George Floyd.

3.    To exclude reference to Mr. Jones' trauma relating to the Capitol Riots.

4.    To exclude reference to Officer Bueno's other deployments of his less-lethal launcher on May 30, 2020, including at the person on the roof.

5.    To exclude body camera videos that do not show Officer Bueno or Mr. Jones.

6.    To exclude Jason Latham from testifying as to what body-worn video

shows, particularly the last three frames of the video.

7.    To exclude exhibits concerning prior incidents of misconduct by Officer Bueno.

8.    To exclude certain information, contained in the Amended Complaint, about Mr. Jones' past and his scholarship, including his internships, and his "Bloody Sunday" music video.

9.    To exclude reference to the Chaleff report, the After-Action Report, and the FID Report.

10.    To exclude personal affirmations by attorneys.

11.    To limit the scope of Erin Min's lay testimony.

12.    To prevent Erica Greulich from testifying that she is working on a pro bono basis.

13.    To prevent Mr. Latham from opining on Mr. Borden's report.

14.    To limit Clark Kimerer's report on various grounds.

15.    To preclude reference to Officer Bueno's right to indemnification by the City.

16.    To preclude evidence of policy violations that did not cause injury and/or are not relevant to Officer Bueno's actions, including: (1) 794.1 UOF investigations causing head strikes; (2) LAPD Manual Section 210.25 Attention to Duty; (3) LAPD Policy 130.25 REVERENCE FOR HUMAN LIFE; (4) Use of Force Tactics Directive No. 17; and (5) LAPD Manual 579.15.

In addition to the motions *in limine*, Mr. Jones also anticipates that Coordinated Universal Time ("UTC") timestamps on his text messages produced during discovery will be an evidentiary issue. As is consistent with modern ESI production of text messages, Mr. Jones' text messages were produced using UTC. *See Rabin v. Pricewaterhousecoopers LLP*, 2016 WL 5897732, at *3 (N.D. Cal. Oct. 11, 2016) (describing "metadata provided pertaining to dates and times will be standardized to Universal Coordinated Time (UTC)"). During depositions, Officer Bueno's counsel has

been confused by the time indicated in UTC, including what the actual time of text messages are in Pacific Time and a simple conversion from UTC to Pacific Time for each text message.  Mr. Jones intends to ask the Court to take judicial notice of the definition of UTC, along with appropriate conversion from UTC to Pacific Time.  Mr. Jones also seeks to advise the jury regarding what time stamps on text messages signify in determining when text messages were sent or received.

## V.    ANTICIPATED ISSUES OF LAW

Mr. Jones anticipates there may be disputes as to the appropriate jury instructions. Mr. Jones' position on any disputes of law regarding jury instructions will be contained in Mr. Jones' proposed jury instructions.  Qualified immunity will be an additional issue of law to be addressed by the Court.

All agreements regarding admitted exhibits and all objections, including the grounds therefor, are included in the parties' Joint Exhibit List.  Mr. Jones does not know which additional issues of law Officer Bueno may raise at trial.  Mr. Jones reserves the right to respond to such issues at trial should the need arise, or to raise issues in response to those introduced by Officer Bueno in his case-in-chief.

## VI.    BIFURCATION

This action is already bifurcated, setting some of Mr. Jones' claims for trial on February 28 and other of his claims to be tried at an unscheduled later date.  Officer Bueno has indicated he will request bifurcating the determination of punitive damages into a second phase of trial, should the jury find that punitive damages should be awarded in the first phase.  Mr. Jones has consented to this request, but Mr. Jones reserves the right to: (a) object as appropriate to any evidence Officer Bueno seeks to introduce during that phase and (b) introduce evidence and argument about indemnification by the City in the event Officer Bueno opens the door in that phase by arguing he cannot pay a damages award.

## VII.   JURY TRIAL

Mr. Jones contends that all issues presented by this action are triable to a jury as

27

a matter of right, and that Mr. Jones made a timely demand for a jury trial in both his original Complaint, filed on December 9, 2020, and his First Amended Complaint, filed on December 21, 2021. *See* Dkt. 1 at 29; Dkt. 89 at 53; Fed. R. Civ. P. 38; L.R. 38-1; *see also Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1427 (9th Cir. 1996) ("[P]laintiffs who bring an action at law under section 1983 have the right to a jury trial."), *aff'd*, 526 U.S. 687 (1999).

## VIII.  ATTORNEYS' FEES

Mr. Jones contends that attorneys' fees and costs are recoverable in this matter. *See* 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of section[] . . . 1983 . . .  the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs. . . ."); Fed. R. Civ. Proc. 54(d)(1) (prevailing party in litigation is generally entitled to costs); *see also Maine v. Thiboutot*, 448 U.S. 1, 9 (1980) ("fees are available in any § 1983 action").

## IX.   ABANDONMENT OF ISSUES

None of Mr. Jones' claims have been abandoned.  Mr. Jones is presently not aware which affirmative defenses Officer Bueno intends to pursue at trial and which he has abandoned.

Dated:  January 26, 2023                    Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP


By:  */s/ Orin Snyder*

Orin Snyder
Attorney for Plaintiff